Good morning. May it please the court. My name is John Poppageorge. I am counsel for the appellants Forest River and Camping World RV Sales. The plaintiffs brought this claim under the Magnuson Moss Warranty Act in addition to state-related claims involving deceptive trade practices. After nine months of routine litigation involving minimal discovery, a single day of inspection by plaintiffs' experts, and mediation where four plaintiffs' counsel appeared and attended, the case resulted in a settlement where the plaintiffs obtained a replacement motorhome. Plaintiffs then filed a petition for attorney's fees pursuant to the Magnuson Moss Warranty Act and the court awarded almost $93,000 in attorney's fees. This award by the district court was issued... And you think that's excessive, right, Mr. Poppageorge? You think that's grossly excessive? Absolutely, Your Honor. And you all bailed out of this case. You wanted to get out of this case really bad and you got everybody to agree to seal it up, right? Absolutely, Judge. You didn't want any more of those product liability cases on these faulty RVs going around the country. You bought your way out of this case, isn't that right? I'm sorry, the last part, my apologies? I said you bought your way out of this case, your client. You got the file sealed, right? Your Honor, the settlement agreement was never presented to the district court. An affidavit of a Forest River representative was presented to the district court. That's right, you don't want it out. But they came up with an expert report that really blew you out of the water. Well, they came up with an expert report that was 158 pages long and what could only be described as unreasonable. And you say it was excessive work, too. But on the basis of it, you bought your way out. Your Honor, we did settle in the interests of avoiding further litigation with the plaintiffs. And in addition, from a customer service perspective, yes, we did resolve the case. We replaced the plaintiff's motor home with a new motor home. And following that settlement, plaintiffs sought a very large sum for attorney's fees and the district court erred in awarding $93,000 for two reasons. And the issue of fees and costs were reserved in the settlement agreement. Yes, they were, your Honor. They were reserved for litigation. So everything was settled except the fees and costs. And that went to Judge Hilton. That is correct. That is correct. And the district court... Judge Hilton basically gave them what they asked for based on the time that they had spent and the expenses, including the $18,000 in expert fees. And you all thought that was too much. We did. And the reason we thought it was too much was... You had given them... Somewhere or another, there's an affidavit that put in the terms of the settlement agreement. And you gave them a new RV plus the money. We gave them a new RV and $5,000 for camping expenses. And the district court erred in awarding them... Even though the settlement agreement's not in, somebody put in that much in an affidavit that you don't contest. The settlement agreement is not contested in the sense that the party settled the case. What is contested is the amount... No, but the settlement agreement... You said the settlement agreement is not in the record. Or was it before the district court? It was not. That's correct. Only the affidavit... There was an affidavit that said what the settlement agreement was. There was an affidavit by a Forest River employee that explained the terms of the settlement, which went to the important issue of the success that was achieved by plaintiffs related to this. In terms of the... And the facts stated in that affidavit were not contested. In the affidavit of the Forest River employee, that is correct. They were not contested. And so we know, and Judge Hilton knows, knew what the terms of the settlement agreement were because they were in the affidavit. Yes, Judge Hilton knew that the plaintiffs received a replacement motorhome, and he knew what the value of that replacement motorhome was, plus the additional fees for the camping fees. Which was the value of the motorhome was, what, $147,000? Originally, yes. The value of the motorhome was $147,000. Well, that's what they purchased the motorhome for, was $147,000. The value of the replacement motorhome was $147,000. That's what I said. No, the value of the replacement motorhome was $22,000. The invoice cost... The first one was $147,000, and the second one was worth $22,000? Yes, the replacement motorhome was worth $22,000, and the reason is because you take the value of the cost of the new motorhome, which was $121,000, and you take the value of the old motorhome that had the warranty issues, and that was $99,000, and the affidavit outlines that the value of that replacement was then $22,000, and then Forest River and Camping World also paid an additional $5,000 for the camping fees, and that gets us to the point of the success that was achieved, and that's the second consideration for why the district court erred in awarding the fees. The first is the hourly rate evidence was insufficient to establish that the rates sought by council aligned with the prevailing rates in the community. Mr. Bennett's affidavit, Mr. George. Yeah, Mr. Bennett's affidavit says that in paragraph 13... Apologies, paragraph 11, that his firm charges $750 an hour for his work, and then he had the rates for the other two attorneys, but the affidavit does not contain any evidence that the rates sought by Mr. Bennett and his firm aligned with the prevailing rate for other consumer protection lawyers working in the same community and involving cases of the same complexity, and this was not a complex case, and so what plaintiffs did... It was not a complex case, but I'm not sure that's right either, but the affidavit in this case, this was an affidavit, as you did too, it's really a declaration, but the declaration was filed in support of the claim for attorney's fees. It was, but it did not... And if a not means anything, it undermines the attorney's fees claim. I would agree with you 100%, Judge. Which convinces me pretty readily that the not is a clerical error. Judge, it very well could be. If it means anything, it undermines the claim for attorney's fees, and the declaration was submitted, and it says on the cover sheet, declaration in support of the claim for attorney's fees, and Mr. Bennett was longer representing the plaintiffs making the claim for the attorney's fees, and somebody put an extra not in there, and I don't know why they didn't clean it up, and you all of the... You didn't raise it with the district court, but you raised it on appeal, and you raised your opening brief, and you raised it again in your fly brief. I'll agree with that, but you didn't raise it with the district court. Your Honor, but what we did raise, and I would agree with you that it is likely a typographical error, but the plaintiff's... A typographical error doesn't mean anything, but that's the basis, big basis of your assertion that they're asking too much money. No, Judge, the primary basis... The primary basis... It says on the front page it supports the claim, and he says how much work they did, and they got a settlement out of you all, and you didn't want any more of these lawsuits, and that's pretty apparent too. I didn't come over on the pickle boat, let me tell you. I've been in lawsuits on both sides of these things, and I've been around a lot of settlements, and you can tell when, particularly in product liability cases, when the corporate manufacturer wants out. They want out quick, and they'll get out quick if they can, and they don't want any more suits that look like this one. Your Honor, but $93,000 in attorney's fees for nine months of work is on its face unreasonable. According to Judge Hilton, it was within... And he cited this Metro case, whatever it's called, from 2011 in the Eastern District of Virginia in the Alexandria area. He relied on that, not just on this affidavit with the extra naught in it, but he relied on this other case up there about the rates of lawyers, and they are compared to what they were when... I didn't practice in that area, but I practiced when lawyers got $25 an hour sometimes, but they get big rates now, and particularly up there in Northern Virginia and around D.C., and he said in 2011, they were getting rates like this. Judge Hilton did. He's been around a long time, too, and he's seen a lot of lawyers come through there, a lot of law firms. Your Honor, the Grissom case clearly...  Judge Hilton says this is reasonable. He... We review that for abuse of discretion, and our review is strictly circumscribed of his... Whether he abused his discretion or not. So if you... With me on his attorney's team... Judge, I did gather that, and if I may... Yeah. The Vienna Metro Matrix involved a $100 million real estate dispute involving lawyers from Kirkland and Ellis, and Mr. Riley did a survey at hourly rates of very large international law firms. With all due respect to Mr. Burge, who I know and have litigated across the country, those firms are just not simply the same type of law firms. This was not $100 million. You know, other cases have said that... Including Hair Color for Men, that if... It was not a complex commercial case. This was a breach of warranty claim, and I understand there's some argument that the motorhome is certainly a potentially complicated vehicle, but at the end of the day, the hourly pages explain what was the problem with this motorhome. I mean, there's a lot of work went into that, which you challenged, too. You said it was a waste of time, but it certainly looks to me like it convinced you all to settle quick. Judge, with respect to the Vienna Matrix, however, what the law requires plaintiffs to do is submit evidence that the rates that they are seeking coincides with the rates in the community. They did not submit any evidence from any consumer protection attorneys that attested to the type of work that the plaintiff's counsel did or that the type of hourly rates they sought. The affidavits from Mr. Bennett and Mr. Burge were vague. There's no indication that they have received those hourly rates from other courts, no indication that clients have specifically paid for those hourly rates, and when you combine the vague evidence from those two lawyers plus an affidavit from a case that involves $100 million 11 years ago, there is simply no evidence. Mr. Papa George, can I ask you about the two areas that I worry about most of your case? Do you practice regularly in the Alexandria Division? I do not. Okay, so I guess I was... As a descriptive matter, it is my sense that district judges in the Alexandria Division use the Vienna Matrix all the time. And so I'm wondering whether they're just sort of... As a descriptive matter, it's my sense that they do that. But then let me ask you about something specific to your case. Can we talk about likelihood of success and what I'm supposed to do with this sentence on JA 38? Plaintiffs have prevailed on all elements necessary on all claims. Now, maybe that was an unwise stipulation that you now regret, but I don't understand how that's not just ballgame on the degree of success factor. I feel like you stipulated that they had a complete success. And so I don't think it's a stopple. I don't know exactly what it is, but I don't know what to do in a world where you're asking me to say they didn't succeed when the party stipulated that they succeeded on all elements of all claims. Could you address that? Absolutely, Judge. And I would point to Hensley v. Eckerhart, United States Supreme Court, that concluded that a prevailing party only gets to the statutory threshold. And in this particular case, we would agree that the plaintiff- Well, right, right. Whoa, whoa, whoa. But that's very different. Hensley says that as long as you prevail on one claim, you're still a prevailing party, even if you lose on seven other claims. But that's not what you stipulated, too. You didn't stipulate that they prevailed on all elements of one claim. You stipulated they prevailed on all elements of all claims. That's very different than Hensley. Your Honor, I see that my time is up. But may I finish my- Yes, you may. You may. Thank you, Judge. Your Honor, the fact that we stipulated that the plaintiffs were a prevailing party does not result in a district court from- I mean, the district court still must engage in a lodestar analysis. That's a separate bucket. We have a bucket of prevailing party, and we have a bucket of what I call the lodestar bucket. And critical to that is the termination of the hourly rate. And there was simply no evidence. I've covered this point of a prevailing rate in the community. In addition, the findings, which Hensley tells us, have to be very clear, and the district court must make clear what its findings are related to the success. That's the third prong of the McAfee and the Grissom cases. What is the success achieved? You can be a prevailing party, but yet not achieve the success you initially sought. Remember, we're looking at over $500,000 of an initial request. Treble damages, emotional distress, anxiety, lost time, all related to this motorhome. And at the end of the day, the value is $27,000. And I would go so far as to say that's not even close to what they were originally seeking and when the success is not, it's limited essentially, then Hensley tells us that you can reduce the fee award when the scope is limited in comparison. And that is what has happened in this particular case. So bottom line, you have no evidence of hourly rates, and you have findings that do not establish that the court considered the success achieved, which was much, much less than was originally sought. And I am now two minutes over, so I will stop, and I will reserve the cost discussion for rebuttal if that's okay. Thank you, Mr. Provenzales. Mr. Wessler. Thank you, your honors. May it please the court, Matthew Wessler for the accolades. I'd like to make two brief points, and then I'd be happy to answer any questions the court has. First, although the defendants have raised a number of arguments in their challenge to this garden variety fee award, the district court below addressed and rejected them pretty squarely. Of course, the defendants disagree with the reasons given by the district court, but that is not under this court's highly deferential, and as Judge King emphasized, sharply circumscribed standard of review, a basis to overturn the district court's conclusions. And the defendants' own best cases illustrate the point. In both Robinson and Grissom, the only reason that this court overturned a fee award was for legal error. You know, on occasion that happens. For instance, if a court approves a particular rate without any corroborating evidence. But that is not what happened here. The main challenge is the defendant has pressed that the fee was excessive when compared to the plaintiff's success in the case, that the district court gave too much weight to the corroborating evidence of reasonable rates, or that the costs were excessive. Those are all issues that fall within the heartland of a district court's discretion on the question of fees. And as this court has explained time and again, the standard of review for fee awards does not empower an appellate court to disturb those aspects of a district court's decision. Mr. Wessler, can I ask you about something that just hung me up the moment I started reading this case? And I don't know what matters here, because I think any such argument is forfeited, and I don't think it goes to our jurisdiction. I don't understand how you can do this at all. There was no judgment. The plaintiff did not get a judgment from the court. It's a private settlement. There is no court-ordered consent decree. On what basis does a district court award fees in support of a purely private settlement that doesn't result in a consent decree? I'm not sure your client is a prevailing party under the statute when you have a private settlement. Have you ever, I've never seen a case like this. Could you tell me why I shouldn't be worried about that other than it's totally forfeited and we don't have to do it? Thank God. Yes. So obviously, I think you're right that it is forfeited. And it doesn't matter for this court's jurisdiction, of course, because there is a final judgment on the fee award, which is what this court reviews. I think your honor is right to be perplexed about how this case got to this posture. And I think, candidly, there might have been a technical defect in failing to seek a judgment approving the settlement in the way that you might think. But I don't think that that stands as a bar, even on its own, to the award of attorney's fees. Because under the statute here, which is 15 U.S.C. 2310, a consumer can obtain awards so long as they quote unquote finally prevail in any action. And the way that the Fourth Circuit has understood the term to prevail, it isn't not an absolute categorical requirement that there either be a judgment or a consent degree or even that the court incorporate a private settlement agreement into some order. This comes, and I know this wasn't briefed, your honor, but I'll tell you anyway, it comes from this court's case in Smith v. Rivera, where after Buchanan, what the Fourth Circuit has said to show that a party has prevailed, the party must, and I'm quoting, demonstrate that it has received some of the relief it sought in bringing the lawsuit in the first place. So I think it's on that basis that the plaintiffs here would qualify as prevailing parties that would then entitle them to fees. So just to close this off, let's say, oh, I'm sorry, Chief. No, go ahead, you wanna close it up, go ahead. So you would tell me if I'm troubled by whether this satisfies Buchanan, that the way I get around that is to say, I don't have to decide this case. We can decide this case in a way that doesn't decide whether this is valid under Buchanan because it clearly doesn't implicate the district court's subject matter jurisdiction, and we clearly have appellate jurisdiction under 1291, and anything else is forfeited and non-jurisdictional. You think we can say that? I absolutely, that is exactly how I would urge this court to resolve that particular aspect of this case, yes. Thank you, Mr. Wessler. Mr. Wessler, my question is this. On the stipulation, my concern is that the district court may have conclusively relied too much on the stipulation in determining the third level of the lodestar, which is the degree of success. And that is, it says, the pertinent part of the stipulation is that the success, quote, on all elements of all claims. Now, you can succeed on all claims, but get very little damages. You see, because it didn't say, the damages are not a claim. You don't get damage because you succeeded on the claim. That's all it said. It seems like the district court just sort of took that and said, okay, when I get to the third level, what they are asking for has found no reason on the level one and level two of lodestar, so therefore they get it. And that's what he did. But don't you have to do more? It's like Mr. Pappajoy said, when you distill what you got, it was about $27,000 in that extent. So how can you just say, oh, stipulation is there, they get it. Don't you have to see what you really got? Yes, 100%, Judge Gregory. And the district court did that here. I'll point your honor to day 403. This is of the district court's opinion where it actually looked, not just at the stipulation to justify its award of the fees, but it actually looked at the degree of the plaintiff's success, which was as the colloquy between Judge King and Mr. Pappajoy revealed in the record in this case. Now it was not the settlement agreement. But no, no, I'll follow through now. You said he looked at it. Well, if you look at it, they didn't get trouble damages. No, they didn't get trouble damages. Well, when you look at it, what do you get to justify $90,000? Oh, well, right. So I mean, well, the actual terms of the settlement are under seal. So I can point you to where they are in the record, which is at J415. No, I'm not talking about giving it to all those things, proprietary things like that. And I'm talking about looking at what the success was. We know what that is. You got another RV for $127,000. The first one was $147,000. We know the salvage value, the value of what you got, $99,000. That's just arithmetic. So we don't need to go into the seal because we don't want to do that because that's the purpose of being sealed. We don't talk about it in public. But that's what you got. Forget about all the other stuff there. It seemed to me the district court clearly said, you know, Katie barred the door. You stipulated you won on everything. Therefore, I see no reason to reduce this at all when I get to level three in terms of this. Tell me where that's resolved. So again, J403, I'll just quote you the language. So after the statement in the district court's opinion, where he identifies the stipulation, there's an additional sentence in that same paragraph. And he says, after comparing the degree of plaintiff success to the amount in controversy, the court finds that the proposed fee award should not be reduced. Now that language indicates that he went beyond the stipulation and actually looked at what the plaintiffs got. Now the defendants have a different- $27,000. Respectfully, your honor, I disagree. That's what the defendants say their view of the value of this settlement was. What's your view? Give me the numbers. Don't go into the substance- The reason the numbers are different- Yeah, just answer my question. What is your view of what the success was in terms of number? Over the amount of the new RV plus the additional payment that the defendants made for an additional warranty and the expenses of travel and camping. And the reason is because- What's that total? I don't have the number in front of me. You don't have the total, you know your case. You're coming here saying $27,000 is wrong and you ought to be able to tell me what number is right. The reason $27,000 is wrong is because the old version of the RV was worthless. So it doesn't equate to just subtract the price of the old RV from the price of the new RV. And so- Was there annoyance, aggravation involved in dealing with this thing? Well, there was, your honor. There were other- But I don't want to get into that too. Why did you let him seal all this up? Your honor, I can't speak to that. I wasn't involved in the sealing below. There's no information in here anywhere. I'm sorry. How does this run the mill product liability case end up sealed completely? Your honor, I'm sorry. I don't have an answer. It's possible that my opposing counsel will be able to answer that question. I wasn't involved in the litigation below. And they said that the settlement agreement wasn't even presented to the district court. They argued, although it's in an affidavit. And why didn't you rebut that point about the not being in paragraph 13 of Mr. Bennett's declaration? Again, I think that was an oversight. You left that to me to try to clarify. Yes, your honor. We do agree it was a clerical error, as you said. I think it was an oversight not to have addressed it in the response brief in this case. Nobody proofread it. You just wanted to get your check and get out of town. I would agree with you that there was some degree of care of sloppiness when it came to the affidavits in this case. But again, I think I would urge this court to recognize and understand that the standard of review here is very circumscribed. Judge Gregory. We did. No question about that. We all agree with that. We have written opinions that said that. And that's the best thing you've got going for you. Yes, I will add, if I could, I would just add that. People go to court with lawsuits. They ought to be open and transparent. And they should only be sealed for good reasons. Not to protect the defendant or the plaintiff from publicity over amount of a settlement or terms of a settlement or the fact of a settlement. But they ought to be open and above board. Transparent. Transparency in the court system is pretty important. And I don't just blame you. I blame the plaintiff and the courts and everybody. We've had discussions about that. And we've amended these sealing rules. And there should be good cause shown to get these things sealed up. Mr. Wessler, if I ask you something that's sealed, you have every right. And I encourage you to say, no, Judge, that's sealed. But can you help me and just stop me when you get to that point? But your client paid $147,000 for the RV that turned out to be had to be replaced, correct? Yes. Was there a lien on it? I don't believe so, Your Honor. OK, so that was outright owned. OK, right. So you're saying that they potentially, let's keep this value the same. They turned in $147,000. And we know depreciation occurs with vehicles. But let's, for the sake of argument, forget about that right now and assume that there was no depreciation. So they turned in a $147,000 asset and received 100 and was it $121,000 asset? Is that right? Yes, Your Honor. OK, all right. So with my math, subject to depreciation, of course, that looks like about $26,000 in the red for your client. I mean, on the paper, I'm sure that was depreciation. So then you got, what, $5,000 for camping expenses due to actually to accomplish the transfer of the vehicles. That's the, you know, OK, that's about, you know, 30 or something, whatever, $31,000. Where's this value that you're talking about? What am I missing in the arithmetic here? There's nothing in the arithmetic that you're missing, Your Honor. But the plaintiff's claim is that they got a defective RV that was worthless. And this is in the briefing in this case. And I'll point you to page 17 and 18 of our brief in this court. But what does it matter? Let's assume you're right. So let's say it was worthless. And it was $147,000 that you had paid for. It was worthless. If they gave you a $127,000 vehicle, what difference does that make? The numbers change. You now, like I said, you're 20, that's why I said you're $26,000 in the red. I understand that. But the numbers still, how do the numbers change? The numbers, I don't think the numbers change. The question is, Your Honor, I'm not quite sure if you're asking whether they prevailed or whether the fees were excessive. No, I'm going to the point that the point is that the district court seemed to put too much emphasis on the fact of the stipulation that that was all that had to be done for the step three of the load stop. And when you said, in response to my question, well, the court looked at the degree of success. So now I'm drilling down with the success and I don't come up with more than 30. So I see three times the lawyer's fee is three times what your client got. I understand if you just rely on the numbers, but from the client's perspective, they had a $0 RV and then they were able to obtain an updated and new RV. And from their perspective, they went from zero to 120, whatever it was, $20,000. Their economic damages on their claims, they recovered fully on those. They were not left, they were made whole when it came to their economic damages. I don't see how, I mean, I know numbers pretty well. I just don't see how you come up with that. Those are the kinds of damages that the other ones didn't prevail on, like the frustration and all those things. But in terms of pure number, they had $147,000 asset that you say, I'm giving you credit for that, that was worth nothing. I get that. But it was replaced with an asset that's $121,000, which you have not disputed, was worth what it was, $121,000, right? So that means that what really should have been $147,000 asset, now because of that transfer, they got $121,000. They're still $26,000 short. They got $5,000 for ancillary travel type camping. But the numbers don't lie. So what I'm saying, and I'm not saying you're lying at all, but what I'm saying is the numbers are the numbers. And you still, I knew it. It had to be frustrating to your client because that's an incredible investment for anybody. It's your family, you're looking at the travel. I'm not discounting that at all. But that was not any of the damages factor here. If that had been the case, that's a different matter. Right now, we're talking about numbers. I understand. And I may not be able to persuade you on this point, but from the standpoint of prevailing on the claims that they made in this case, they were made whole. They did not suffer any economic damage, any lingering economic injury after the settlement. And I would suggest, Your Honor, that even if you can't add or subtract the numbers to get to some particular number that you think would authorize prevailing party, I have not seen in the cases, in any of the cases that the parties decided in this brief, and I've done my own survey since after reading the briefs, which the Fourth Circuit has reversed a district court for its assessment of the degree of success related to the amount of fees that it determined were reasonable. The only aspect- The only problem we have in this case is that you have the stipulation and the record clearly indicates a great deal of emphasis and weight was put on that stipulation in fulfilling the third step or the low stop. And that seemed to be a problem. That's what I'm asking you. I'm gonna have you answer the best you can in forthrightness. So that's my problem here. Normally we don't. But when you have a smoking gun that there's evidence that the court picked it up and was influenced by, that can't be ignored, notwithstanding that normally we don't. Well, I understand. And again, I may not have persuaded you on this point, but do you think- You don't know. My argument, my question is, you don't know what I'm gonna do. Fair enough. I don't always think that, but I'm scared. Yes. I wouldn't do that. Go ahead. Mr. West, I can ask you about costs. So I see the argument that the Camping World's argument about costs is totally forfeited because it was never presented to the district court, which I think they acknowledge in their reply brief. And that's, again, probably sufficient to resolve this case. Do you have any response in the merits? Because I gotta say, I'm left thinking their costs argument is totally forfeited, but it may well be right. And do you have a response on the merits, that they're wrong as opposed to forfeit? Yes, Your Honor. I mean, I think this is a difficult and unresolved question. And the reason it's difficult and unresolved is because the cases that the defendant has cited here, Romini Street, Crawford Fitting, don't involve a statute that looks anything like the Magnuson Moss Warranty Act 15 U.S.C. 2310. There's a key difference. And if you look at Romini Street and you look at Crawford Fitting, in both of those cases, the Supreme Court is looking at statutes that just refer to costs. In Romini Street, it's a copyright statute, 17 U.S. 505. And it says, in an action under this title, the court in its discretion may allow the recovery of full costs. What the Supreme Court said in Romini Street is costs is a term of art that doesn't include expert fees. So unless Congress specifically articulates in the statute that expert fees are included as costs, we're not going to infer it. But the statute here, and I realize I'm about to run out of time, and I'll briefly summarize, 2310 D2 actually says that a consumer who finally prevails in any action is allowed to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses. And it's that additional language that the Supreme Court has not yet weighed in on about whether that second aspect of recovery expenses does include an ability to recover expert fees. Typically, that is where Congress locates the phrase expert fees. Now, is that a winning argument? No, I don't know that it is. But it certainly suggests, to me at least, that there is nothing about this question that is already decided or foreclosed by the Supreme Court. And as you know, this court's waiver jurisprudence, what the defendant would have to show in order to be entitled to a decision on an issue that it has waived is not just plain error, but fundamental error, something that goes to the integrity of the proceeding. And I don't think that this question, which is an open question, is anything close to what would meet that standard. I see my time has expired if the court has no further questions. Judge Gregory, I have a couple of questions. Yes, Judge King. Well, on the cost thing, I second the issue being raised by Judge Hyten. I appreciate it because the opening argument, they didn't get to their cost argument, but which they didn't raise or present to Judge Hilton. But going back to the value of the settlement, you said once that the RV they bought was worthless and they paid $147,000 for it. That means they're $147,000 out of pocket. I don't know why you would agree that they came out ahead here. The $147,000 they lost and then they had to deal with the fact that they had a lemon vehicle and then they had to bring a lawsuit and they had our counsel and then they settled for, apparently, according to the affidavit, for something that's worth $127,000. That could be the out-of-pocket number, the $127,000. Yes, yes, Judge King, I agree with all of that. Then you agreed with Judge Gregory that it was worth $147,000. Is it worth $147,000 or is it worth nothing? Yes, Judge Gregory, excuse me, Judge King, you're right. I did not intend to concede that somehow the plaintiffs were in the hole. I don't even think that the defendants in this case have taken that position. So I believe the way you just described it is exactly correct. If there are no further questions. All right, very good. Thank you, Mr. Papas-George. Thank you, Judge Gregory. In my remaining time, real quick, I feel like we beat this horse a little bit on the value, but I just wanted to clarify one thing, Judge, that the original purchase price for the motorhome that was originally purchased by the plaintiffs was $147,000. And that's what I would describe over, and I keep using the word bucket, but I got the old motorhome over here. The new one that they replaced was actually a newer model and it had a wholesale value of 121. And remember when they bought the older one, that was a retail value. What was the retail value of the new one? Pardon me? What was the retail value of the new one? Your Honor, there is no evidence in the record of what the retail value of the new one is. The defendants focus on the- Well, you represent it and you're here, so I'm going to ask you what the retail value is. I would say that it's greater than $147,000 given the RV market and how much it exploded in the last two years. But when you look at the success issue, you focus on what the value of that new one is and the defendants clearly focused on what the invoice cost was of the new one minus the wholesale value of the old one. So either way, Judge, we're in that $25,000 to $30,000 range and- Well, you're not. If it was worthless, they paid $147,000 and it was worthless, they're out of pocket the $147,000. But they were not out of pocket because they received a new one. Well, they were and they paid $147,000 and it was worthless is what the band said. That's what the complaint says, I think. But what are you going to do about your cost claim? Yeah, and my- That you didn't get. I'm going to get that because you didn't argue that earlier. Here's my final point on the value.  All this discussion that we've had about the value of the RV market the district court didn't even discuss it. And I'll leave it at that. And that's our primary argument on why that award based on the fees was in error because there was no discussion. Quickly with under three minutes left. On the cost issue, the first primary issue, again, is the district court's failure to address the reasonableness of the cost. Looking at the plaintiff's report- And you present that to the district court. Yeah, we did. We did present the unreasonableness of the cost to the district court. We argued that $29,000 was unbelievably unreasonable. In fact, if you agree with us that the value of the RV is 27 and I recognize it as a dispute, but if you agree with us, Mr. Bailey charged more than the value of what the plaintiff's got. And- But to clarify, Mr. Papagiorgi, you never argued to the district court this category of expenses is categorically not recovered as cost. You never argued that to the district court, did you? We did not argue to the district court that the costs were not recoverable under section 19-20. We did not. What we argued was a reasonableness issue. That issue was- I'm going to sort of put the sword in me here. That issue was identified after the district court's opinion judge. I would argue that if this case gets remanded, I think there's an issue out there as to whether we can then make that argument on the second go-round because you would assume that the plaintiffs would get to make the argument that the hourly rate is coincides with the prevailing rate. But I'll put that issue aside because what the district court did not do was an analysis of whether that $29,000 was reasonable. There was no discussion about the fact that Mr. Bailey took 34 hours. What's the standard of review for that? Is it plain error or can we review it at all? It wasn't reviewed by the district court and you raised it on first time on appeal. Is that plain error review or is it something else? Well, we did raise the reasonableness of the costs and judge, I would argue that that standard of review is an abuse of discretion but I would also argue that the district court clearly got it wrong and in part because the opinion didn't outline any of the facts regarding the $29,000 for the expert report. All the judge said was the defendants have made a Daubert style attack and therefore I'm gonna reject that and I'm gonna award 29,000. He did not look into the fact that it was 10 times more than the defendant's expert, that 34 hours measuring moisture when water was visible. I'm not sure why it took so long when you could see the water damage which is why we resolved the case and all he focused on the judge was the Daubert style issue and I think that's a separate issue. This is reasonableness and in the whole and is a scope issue, $29,000 for a replacement when the expert report costs more than what the plaintiffs received, something is inherently wrong and the same argument could be made for the fees when and I think affirming this decision is gonna send a chilling message, this is my final comments on this, is gonna send a chilling message to defense litigants because very little work was done in this case, very little discovery, a mediation, four lawyers at mediation, we've sort of ignored that at this point but to have very little litigation, settle the case and then all of a sudden nine months later, the defendants are looking at $121,000 or $124,000 combined award. But whose idea was it to seal this thing up? Well, that was your idea, right? The settlement agreement contained a confidentiality provision judge and that is why... No, but that was proposed by you, by your side. Because we didn't want to breach the settlement agreement by... That was proposed by your side to seal everything up, that's right. And the only thing we sealed was the affidavit. What was the value placed on sealing everything? To not breach the settlement agreement. No, the value, the monetary value of sealing it for you. Judge, I don't think there was any monetary value to sealing it. It was that the sealing, it had nothing to do with trying to protect the defendant's reputation or anything like that. I mean, these defendants are routinely involved in litigation. Could we unseal it now? Assuming the plaintiffs have no objection to the confidentiality language in the settlement agreement, sure, we would do that. Your Honor, I am way past my allotted time. I just want to make it sort of clear, this argument about it would resolve the case on the waiver. And at most, that would be only for the cost, not for the attorneys. Correct? Absolutely, absolutely. And that gets to the final point of what does this court do? And our position is, you have two choices. You can remand it for further evidence of hourly rates and further consideration of the success, or this court has held that a fee should not result in a second major litigation. And if this court determines that those fees are wholly unreasonable and those costs are wholly unreasonable, this court has the right, as it has done, to reverse and pick a number and say, we think this is reasonable and it's reversed. Okay. Thank you very much, counsel. Thank you all. Thank you, Judge. Thank you both for your arguments. We can't come down and greet you as we would like to do, but know very much that we appreciate your arguments and being here and wish you well and be safe. Thank you, counsel. Thank you.
judges: Roger L. Gregory, Robert B. King, Toby J. Heytens